UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
WALTER J. WENTLAND & NICHOLAS
WENTLAND,

        Plaintiffs,

vs.                  **COMPLAINT**

NEW YORK STATE TROOPERS CONNOR
CORNINE, RAMIREZ, MATTHEW McKINNEY and
DEPUTIES ELLIOT BROOKS and RICHARD
WIEBOLDT of the ORANGE COUNTY SHERIFF'S
DEPARTMENT,

        Defendants.
-----------------------------------------------------------------x

  By and through their counsel, plaintiffs complain of defendants as follows:

I. **PARTIES**

  1. Plaintiffs Walter J. Wentland and Nicholas Wentland are father and son, United States citizens, both of legal age and residents of the County of Orange, State of New York.

  2. At all times relevant hereto, defendants Cornine, Ramirez, and McKinney were members of the New York State Police who were assigned to official duties on July 22, 2018, and, on that day, engaged in excessive force or failed to intervene to prevent the use of such force in the County of Orange, State of New York. At all times relevant hereto, defendants Brooks and Wieboldt were members of the Orange County Sheriff's Department and on July 22, 2018, they engaged in excessive force and/or and failed to prevent its use in the County of Orange, State of New York.

II. **JURISDICTION**

  3. As plaintiffs contend that each defendant either engaged in excessive force against one of them or, despite reasonable opportunity, failed to intervene to prevent the use of such unconstitutional force by one of the other named officers or by another unnamed and

1

unidentified officer, this Honorable Court has jurisdiction over them pursuant to 28 U.S.C. secs. 1331, 1343 and 42 U.S.C. secs 1983 and 1988.

III. **STATEMENT OF FACTS**

4. In the early evening of July 22, 2018, plaintiff Nicholas Wentland was driving while intoxicated in the Town of Wawayanda, New York.

5. At the same time, plaintiff Walter Wentland was at his home in the nearby Town of Greenville, New York.

6. While driving, plaintiff Nicholas Wentland struck a telephone pole and severely damaged his vehicle.

7. Plaintiff Nicholas Wentland sustained no injuries in or through the one-car accident.

8. Plaintiff Nicholas Wentland called home from the site of this accident and asked his father, Walter Wentland Sr., to come to the scene.

9. Following the accident, emergency medical personnel and members of the Orange County Sheriff's Department arrived at the scene and questioned Nicholas and his passengers.

10. This questioning occurred outside of a vehicle owned and operated by the Orange County Sheriff's Department.

11. As a family member drove Walter Wentland to the scene, defendant Cornine approached Nicholas, began berating him, stating he would go to jail for drinking while driving.

12. Upon arrival at the scene between 8:15 and 8:30 pm, Walter Wentland saw the extent of damage to the vehicle his son was driving and became concerned for the occupants' well-being.

13. Plaintiff Walter Wentland began calling Nicholas' name in an effort to locate him.

14. As Walter called out his son's name, those then attending to Nicholas, specifically defendants Wieboldt and Cornine, told him to find his father and advise him that he was ok.

15. As Walter was calling for his son, defendant Cornine approached him.

16. Defendant Cornine got in Walter's face, came chest-to-chest with him and screamed words to the effect that "you are drunk and going to jail".

17. Walter was then engaging in no aggressive motion or action but continued to inquire after his son's well-being and call for his son when defendant Brooks violently struck him.

18. As Nicholas approached his father peaceably, defendant state troopers tackled him and pushed him down a steep embankment, where defendants Wieboldt and Brooks proceeded to beat him both before and after he was handcuffed, including striking him with significant force with a baton on the top of his head.

19. Defendant Wieboldt's use of force was totally unwarranted as Nicholas posed no threat to any member of law enforcement, was not engaged in any conduct warranting the use of any force and never resisted the lawful orders or direction of any officer. Such excessive force caused plaintiff to receive staples in his head to close an open scalp wound and caused plaintiff substantial and persistent physical pain and suffering.

20. As defendant Wieboldt engaged in such excessive force against plaintiff Nicholas Wentland, defendants Cornine and Brooks tackled plaintiff Walter Wentland and pushed him down the same steep embankment, landing about 5-6 feet from where Wieboldt was pummeling Nicholas. Neither intervened or caused Wieboldt to desist from striking Nicholas.

21. At the bottom of the embankment, defendants Cornine, Brooks, Ramirez and McKinney all used excessive force against plaintiff Walter Wentland and none of these officers nor Wieboldt sought to intervene to stop the use of such force.

3

22. This force included striking Walter Wentland in his head with a baton, causing him to require five staples to close wounds to his heads.

23. In addition, defendant Brooks repeatedly tasered plaintiff Walter Wentland.

24. Defendants Cornine, Brooks, Ramirez and Martinez all beat plaintiff Walter Wentland about his head and one or more of these officers further tasered him, both before and after he was handcuffed.

25. By and through his use of excessive force, defendant Cornine tore plaintiff Walter Wentland's rotator cuff [requiring surgery with placement of multiple anchors] and dislocated Walter's knee.

26. As a result of the beating to his head by defendant Cornine, Brooks, Ramirez and McKinney, plaintiff Walter Wentland became minimally responsive, was caused hearing loss and blurry vision to his left eye, necessitating after care from medical specialists.

27. Civilians witnessed defendants' use of excessive force and screamed for them to stop; defendants continued to beat and pummel the plaintiffs.

28. Defendant Cornine's response to the injuries he and other defendants inflicted on Walter Wentland may be summarized by the following: as Walter pleaded for medical assistance and experienced great pain, defendant Cornine denied him medical attention and told him that he would drag his ass up the hill if Walter did not walk up himself.

29. En route to Orange Regional Medical Center, plaintiff Walter Wentland lost consciousness as a consequence of the excessive force used against him and the defendants' collective failure to intervene or provide him appropriate medical treatment at the scene.

30. Following the beating he sustained, at the medical center, plaintiff Walter Wentland remained minimally responsive and presented with a three-centimeter laceration to his scalp, the consequence of defendant Brooks striking him with his baton.

31. At Orange Regional Medical Center, plaintiff Walter Wentland was provided critical care made necessary because his injuries acutely impaired one or more vital organ systems, creating a high probability of imminent or life-threatening deterioration in his condition and requiring his admission to the trauma unit.

32. At the medical center, plaintiff Walter Wentland complained of a lack of vision in his left eye and pain in his left shoulder, the direct consequence of defendant Cornine striking him.

33. Within four days of the beating referenced above, plaintiff Walter Wentland consulted with ENT and Allergy Associates, LLP and was diagnosed with asymmetrical sensorineural hearing loss in both ears. He had no prior hearing issues.

34. Plaintiff Walter Wentland also sustained ongoing and substantial pain in his left shoulder, both anterior and lateral, as well as weakness and loss of range of motion.

35. On or about August 1, 2018, an MRI showed a "full thickness supraspinatus tendon tear with retraction of the humeral head without skeletal muscle atrophy."

36. Before the use of excessive force reported above, plaintiff Walter Wentland worked as a fence installer for thirty years.

37. Following the severe beating administered by defendants, plaintiff Walter Wentland was unable to work for six months and had surgery on the torn rotator cuff in his left shoulder.

38. Said beating caused plaintiff Walter Wentland severe and sustained pain, loss of motion, loss of activity and quality of life for months and substantial emotional distress, as manifested by his waking in the middle of the night screaming for months.

39. Since the defendants engaged in the unconstitutional use of excessive force set forth above, both plaintiffs continue to experience considerable fight and apprehension in the presence of police officers.

40. The conduct of each defendant was malicious, sadistic and beyond the bounds of a civilized society.

IV. **CAUSES OF ACTION**

**AS AND FOR A FIRST CAUSE OF ACTION**

41. Plaintiffs incorporate paras. 1-40 as if fully set forth herein.

42. By and through his use of excessive force against plaintiff Nicholas Wentland, defendant Wieboldt violated the Fourth Amendment as made actionable against him by and through 42 U.S.C. section 1983 and by failing to intervene to prevent the use of such force despite having an obligation and reasonable opportunity to do so, the other named defendants violated rights accorded plaintiff Nicholas Wentland by the same Amendment,

**AS AND FOR A SECOND CAUSE OF ACTION**

43. Plaintiffs incorporate paras. 1-42 as if fully set forth herein.

44. By and through their use of excessive force against plaintiff Walter Wentland, or their failure to intervene to stop others from using excessive force, each named defendant violated the Fourth Amendment as made actionable against him by and through 42 U.S.C. section 1983.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray that this Honorable Court take jurisdiction over this matter, empanel a jury to hear the matter, award to plaintiffs and as against each defendant

compensatory and punitive damages and attorneys' fees and costs and enter any other order the interests of justice and equity require.

Dated: July 20, 2021

Respectfully submitted,

Michael H. Sussman [3497]

SUSSMAN & ASSOCIATES
PO BOX 1005
GOSHEN, NY 10924
(845)-294-3991