UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
WALTER J. WENTLAND & NICHOLAS WENTLAND

                Plaintiffs,

   -against-

NEW YORK STATE TROOPERS CONNOR CORNINE, RAMIREZ, MATTHEW McKINNEY and DEPUTIES ELLIOT BROOKS and RICHARD WIEBOLDT of the ORANGE COUNTY SHERIFF'S OFFICE,

                Defendants.
------------------------------------------------------------------------x

No. 21-cv-06195 (PMH)

# MEMORANDUM OF LAW
# IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE*

SUSSMAN & GOLDMAN
*Attorneys for Plaintiffs*
1 Railroad Avenue, Suite 3
Goshen, New York 10924
(845) 294-3991 [Tel]
(845) 294-1623 [Fax]

Dated: January 30, 2023

**PRELIMINARY STATEMENT**

By and through their undersigned counsel, plaintiffs Walter J. Wentland and Nicholas Wentland respectfully submit this memorandum of law in support of their motion *in limine*, which seeks an order: (1) precluding defendants' police practices expert from testifying in whole or in part; (2) precluding defendants from offering evidence of plaintiff Walter J. Wentland's previous arrests and convictions; and (3) precluding defendants from offering evidence of plaintiff Nicholas Wentland's criminal conviction.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

This is an action for excessive force brought by plaintiffs Walter and Nicholas Wentland against defendant New York State Troopers Connor Cornine, Daniel Ramirez and Matthew McKinney (collectively the "State Defendants") and defendant Orange County Sheriff's Deputies Elliott Brooks and Richard Wieboldt (collective the "County Defendants"). In short, plaintiffs allege that, during their encounter with the defendants on the evening of July 22, 2018, the defendants used excessive force against them and/or failed to intervene to stop the use of excessive force by each other.

**ARGUMENT**

**Point I**

**State Defendants' police practices expert should be precluded, in whole or in part.**

The State Defendants have proffered New York State Police Technical Sergeant Philip D. Shappy as a police practices expert. Since Sgt. Shappy's testimony is unhelpful to the jury, impermissibly opines on the relevant legal standards and seeks to supply the jury with its ultimate legal conclusion, he should be precluded from testifying at trial.

1

Federal Rule of Evidence 702 governs expert testimony and provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Court "performs a 'gatekeeping' role under Rule 702 to ensure 'that an expert's testimony both rests on reliable foundation and is relevant to the task at hand.'" *Stern v. Shammas*, No. 12-cv-5210, 2015 U.S. Dist. LEXIS 97879, at *4 (E.D.N.Y. Jul. 27, 2015) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)). "Even after determining that a witness is 'qualified as an expert' to testify as to a particular matter, and that the opinion is based upon reliable data and methodology, Rule 702 requires the district court to make a third inquiry: whether the expert's testimony (as to a particular matter) will 'assist the trier of fact.'" *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).

Moreover, while Rule 704 generally allows an expert opinion that "embraces an ultimate issue to be decided by a trier of fact," Fed. R. Evid. 704(a), that Rule "has not 'lowered the bars so as to admit all opinions,'" *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) (quoting Fed. R. Evid. 704 advisory committee's note). Indeed, it is well established that an expert opinion is inadmissible "if it usurps the role of the jury in applying the law to the facts before it, as such testimony undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Callahan v. Wilson*, 863 F.3d 144, 153 (2d Cir. 2017) (cleaned up) (quoting *Nimely*, 414 F.3d at 397); *See also Giles v. Rhodes*, No. 94-cv-6385, 2000 U.S. Dist.

LEXIS 13980 at *53 (S.D.N.Y. Sept. 27, 2000) ("Generally the use of expert testimony is not permitted if it will usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it" (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994))).

Accordingly, in excessive force cases, courts in this Circuit routinely exclude proffered expert testimony that opines on the applicable legal standard and renders ultimate conclusions about whether an officer's use of force was reasonable under the circumstances. *See*, *e.g.*, *Callahan*, 863 F.3d at 154 (affirming exclusion of expert opinion that the officer "did not act reasonably under the circumstances" because same "intrude[s] on the jury's exclusive role as the finder of facts"); *Hygh*, 961 F.2d at 364 (finding district court erred in admitting expert opinion that officer's conduct was not justified because it constituted "the ultimate legal conclusion entrusted to the jury"); *Gibbs v. Borona*, No. 16-00635, 2021 U.S. Dist. LEXIS 59315, at *4-*8 (D.Conn. Mar. 29, 2021) (holding proposed expert's opinion about reasonableness of officer's actions under Fourth Amendment standard inadmissible, noting she "may not testify on any ultimate legal conclusion about whether the use of force was constitutionally reasonable."); *Stern*, 2015 U.S. Dist. LEXIS at *8-*9 (holding expert "cannot offer legal conclusions . . . includ[ing] any opinions that the force used by Defendants was 'unreasonable' . . . ."); *Giles*, 2000 U.S. Dist. LEXIS 13980 at *52-53 (S.D.N.Y. Sept. 27, 2000) ("I conclude that [the expert] may not give an opinion as to whether the defendant's use of force was reasonable or proper within the governing legal standards.").

In addition to the prohibition of experts opining on the applicable legal standards and the ultimate determination as to the reasonableness of force used, likewise, it is improper for experts to make credibility determinations or to opine about the parties' respective motives, intent or state

3

of mind. *See Nimely*, 414 F.3d at 397-98; *Stern*, 2015 U.S. Dist. LEXIS at *8-*9; *Rizk v. City of New York*, No. 14-cv-6434, 2022 U.S. Dist. LEXIS 55793, a *7 (E.D.N.Y. Mar. 28, 2022).

Here, Sgt. Shappy's proposed testimony is precisely the type of testimony the foregoing precedents hold inadmissible. Indeed, as he expressly states: "The purpose of this expert report is to offer my opinion as to the use of force which was testified to as being used by the New York State Trooper defendants after analyzation of all the date provided." *See* Goldman Decl., Exhibit 1 at 7. He then cites the legal standard under *Graham v. Connor*, 490 U.S. 389 (1989), *see id.* at 7, and proceeds to purport to apply that standard to the "facts" as he interprets them [and which plaintiffs dispute] to ultimately conclude the State Defendants did not use excessive force or fail to intervene in the use of excessive force by others, *see id.* at 7-15. In this way, like in *Gibbs*, Sgt. Shappy's report "is essentially a lawyer's closing argument masquerading as an expert report." 2021 U.S. Dist. LEXIS at *6.

Plaintiffs do not endeavor here to demonstrate all the ways in which they dispute Shappy's factual conclusions, as this is not the appropriate place to do so. Suffice it to say, they have a much different view of the facts. For the purpose of this motion, the more critical point is that the jury is perfectly capable of hearing the testimony and deciding what it believes occurred, and then, applying the court's legal instructions as to excessive force and failure to intervene, render an appropriate verdict. Shappy's testimony about what he believes happened based upon his review of this evidence is not needed to aid the jury in this process and, as already explained, inappropriately usurps the jury's role in this regard. And, given the sharp disputes of fact between the parties and the fact that Shappy's conclusions rest upon his believing the defendants' versions of events over plaintiffs', his testimony would also impermissibly make credibility determinations. And, again, his ultimate conclusions as to the reasonableness of the officers' force are inadmissible

If Shappy is permitted to testify at all, then, in addition the foregoing matters, which should be precluded for the reasons already discussed, Shappy should also be precluded from testifying, as he stated in his expert report, that "As officers know, and the literature finds, force is a rare event in the United State.  In the USA, there are about 40 million face-to-face contacts between law enforcement and civilians annually; force was used or threatened in 1.4% of these contacts." *See* Goldman Decl., Exhibit 1 at 8.  First, Shappy is not competent to testify that *other* "officers know" this purported fact.  But, more importantly, his assertion is entirely irrelevant to the determination of any material fact at issue in this lawsuit.  Indeed, the question in this action is whether the individual defendants' use of force in this specific case was reasonable under the circumstances.  Whether or not police use of force in the United States is uncommon does nothing to answer this question.  Finally, even if relevant, the potential prejudice in allowing the jury to hear this assertion outweighs any limited probative value it might have as it might tend to suggest that, since force is generally uncommon, the officers here must have had a good and legitimate reason to use the force they did.  Of course, such would be an impermissible inference because it would not be based upon the facts of this particular case, and only those facts should inform the jury's determination as to the reasonableness of the defendants' use of force here.

In short, Sgt. Shappy should be precluded from testifying as to his beliefs or factual conclusions about what happened the night of July 18, 2022, what the officers knew or should have known that evening, what legal standards should be applied, or what his ultimate determinations are as to the reasonableness of defendants' use of force.

**Point II**

**Defendants should be precluded from offering any evidence of plaintiff Walter Wentland's arrest and criminal conviction history.**

After his encounter with defendants that forms the basis of this action, Walter Wentland was charged with several offenses, including, *inter alia*, assault in the second degree, obstructing governmental administration in the second degree, resisting arrest and disorderly conduct. He initially pled guilty to assault in the second degree and obstructing governmental administration under a plea deal that would have allowed the assault conviction to be vacated after one year; however, he succeeded in having that plea vacated by the Appellate Division, Second Department. Thereafter, on remand, he resolved all charges by a plea to obstructing governmental administration in the second degree, with a sentence to a conditional discharge. In his plea allocation, he did not admit to striking any officer or to using physical force against them.

In addition, Mr. Wentland's record includes a conviction of the violation of driving while ability impaired ("DWAI") in 2010, a conviction of criminal mischief in 1987, and what appear to be prior arrests and potential convictions in 1986 and 1987.

Defendants should be precluded from offering evidence of any of these prior arrests and convictions at trial. Initially, the prior ancient arrests and convictions [from 2010 and 1987] are entirely irrelevant to anything that occurred on July 22, 2018, and the prejudicial effect of evidence of criminality substantially outweighs any potential probative value. The same is true with respect to the arrests leading to these convictions and any of the surrounding circumstances. Moreover, none of these convictions is admissible for impeachment purposes under Fed. R. Evid. 609. Indeed, none is for a felony, and none of the offenses of conviction includes as an element a dishonest act or false statement. *See* Fed. R. Evid. 609(a); N.Y. Penal L. § 145; N.Y. V.T.L. §

1192(1). Moreover, the most recent of these arrests and convictions is thirteen years old while the others are more than thirty years old. In short, there is simply no proper basis to admit this evidence.

As for the arrest and conviction arising out of the July 22, 2018 incident, the fact that Mr. Wentland was charged with various offenses is not relevant to establishing what happened that evening. Nor is the fact that he ultimately pled guilty to one count of obstructing governmental administration in the second degree when, in so doing, he made no admission that would have given the police cause to use the force they did that evening. Moreover, even if such evidence was relevant, the potential prejudicial effect substantially outweighs the limited probative value thereof. The potential prejudice is particularly high here given the name of the offense – obstructing governmental administration. Indeed, the fact that Mr. Wentland was convicted of this offense might improperly confuse a jury into concluding that the complained-of force was somehow justified. At bottom, the jury will hear each of the witnesses' accounts of what occurred that evening and, from that evidence, enter an appropriate verdict. The fact that Mr. Wentland's conduct that evening also constituted a particular misdemeanor offense is not relevant to whether the defendants used excessive force. Finally, this evidence is not admissible for impeachment purposes because obstructing governmental administration in the second degree is a misdemeanor that does not involve the commission of a false act or making of a deceptive statement. *See* Fed. R. Evid. 609(a); N.Y. Penal L. § 195.05.

### Point III

**Defendants should be precluded from offering any evidence of plaintiff Nicholas Wentland's criminal conviction.**

After his encounter with defendants that forms the basis of this action, Nicholas Wentland was charged with driving while intoxicated and, later, pled guilty to this offense. For the same

7

reasons as set forth in Point II above, evidence that Nicholas Wentland was charged with and convicted of this offense should be precluded. Again, the jury will hear testimony about Mr. Wentland's state of mind that evening, and the fact that he was later convicted of this offense is not relevant to whether the officers used excessive force. And, even if relevant, the prejudicial effect outweighs the limited probative value. And, as a misdemeanor that does not involve the commission of a false act or making of a deceptive statement, this evidence may not be used for impeachment purposes. *See* Fed. R. Evid. 609(a); N.Y. V.T.L. § 1192(3).

## CONCLUSION

For all of the foregoing reasons, plaintiffs' motion *in limine* should be granted.

Dated: Goshen, New York
      January 30, 2023

Respectfully submitted,

SUSSMAN & GOLDMAN
*Attorneys for Plaintiffs*

By:    s/ Jonathan R. Goldman
      Jonathan R. Goldman (JG8710)
      1 Railroad Avenue, Ste. 3
      P.O. Box 1005
      Goshen, NY 10924
      (845) 294-3991 [Tel]
      (845) 294-1623 [Fax]
      jgoldman@sussman.law

TO: Ian Ramage, Esq.
     Asst. Attorney General
     OFFICE OF THE NYS ATTORNEY GENERAL
     *Attorneys for Defendants Cornine, Ramirez & McKinney*
     28 Liberty Street
     New York, New York 10005
     (212) 416-8659 [Tel]
     (212) 416-6075 [Fax]
     Ian.Ramage@ag.ny.gov

Kellie E. Lagitch, Esq.
Asst. County Attorney
OFFICE OF THE ORANGE COUNTY ATTORNEY
*Attorneys for Defendants Brooks and Wieboldt*
255-275 Main Street
Goshen, New York 10924
(845) 291-3150 [Tel]
(845) 378-2374 [Fax]
klagitch@orangecountygov.com