UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X
WALTER J. WENTLAND and NICHOLAS
WENTLAND,

                             Plaintiffs,

                         - against -

NEW YORK STATE TROOPERS CONNOR
CORNINE, DANIEL RAMIREZ, MATTHEW
McKINNEY and DEPUTIES ELLIOT BROOKS,
and RICHARD WIEBOLDT of the ORANGE
COUNTY SHERIFF'S OFFICE,

                             Defendants.
---------------------------------------------------------------------- X

21-CV-6195 (PMH)

# DEFENDANTS' JOINT MEMORANDUM OF LAW
# IN SUPPORT OF THEIR MOTIONS IN LIMINE

                                                          LETITIA JAMES
                                                          Attorney General
                                                          State of New York
                                                          <u>Attorney for State Defendants</u>
                                                          28 Liberty Street, 18th Floor
                                                          New York, New York 10005
                                                          (212) 416-8659/6359

Ian Ramage
Andrew Blancato
Assistant Attorneys General
    *Of Counsel*

i

**PRELIMINARY STATEMENT**

State Defendant Troopers Connor Cornine, Daniel Ramirez, and Matthew McKinney, current or former employees of the New York State Police, and County Defendant Deputies Elliott Brooks and Richard Wieboldt, employees of the Orange County Sheriff's Office (collectively "Defendants"), respectfully submit this joint memorandum of law in support of their motions *in limine*. In this action, Plaintiffs Walter Wentland and Nicholas Wentland (collectively "Plaintiffs") allege that Defendants subjected them to excessive force or otherwise failed to intervene when Defendants responded to the scene of a motor vehicle accident on May 22, 2018.

State Defendants respectfully seek an order: (1) allowing Defendants to cross-examine Plaintiff Walter Wentland on a prior judicial credibility finding; (2) allowing Defendants to cross-examine Plaintiff Walter Wentland on his criminal conviction and allocution arising from the July 22, 2018 incident; (3) allowing Defendants to cross-examine Plaintiff Nicholas Wentland on his criminal conviction arising from the July 22, 2018 incident; and (4) precluding Plaintiffs from inquiring into the Defendant Cornine's singular disciplinary incident.

**ARGUMENT**

**POINT I**

**DEFENDANTS SHOULD BE ALLOWED TO QUESTION PLAINTIFF WALTER WENTLAND ON A PRIOR JUDICIAL CREDIBILITY FINDING**

Federal Rule 608(b) permits the court to allow specific instances of conduct to be inquired on cross-examination "if they are probative of the character for truthfulness or untruthfulness of…the witness." Fed R. Evid. 608(b). The Second Circuit uses seven

factors ("the *Cedeno* factors") when a court is called to "determine[e] the probity and relevance of a prior incident in which a court has criticized a witness's testimony as unworthy of belief: (1) "whether the prior judicial finding addressed the witness's veracity in that specific case or generally"; (2) "whether the two sets of testimony involved similar subject matter"; (3) "whether the lie was under oath in a judicial proceeding or was made in a less formal context"; (4) "whether the lie was about a matter that was significant"; (5) "how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness"; (6) "the apparent motive for the lie and whether a similar motive existed in the current proceeding"; and (7) "whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible[....]" *United States v. White*, 692 F.3d 235, 249 (2d Cir. 2012), as amended (Sept. 28, 2012) (quoting *United States v. Cedeno*, 644 F.3d 79, 82-83 (2d Cir. 2011)). Furthermore, the Second Circuit has "long held that a witness can be cross-examined on prior occasions when his testimony in other cases had been criticized by [a] Court as unworthy of belief." *White*, 692 F.3d at 248.

      Here, Plaintiff Walter Wentland testified at the sentencing hearing in his criminal case stemming from the July 22, 2018 incident held before the Honorable William DeProspo of the Orange County Court on January 23, 2020. (Ramage Declaration ("Ramage Decl," Exhibit A). At the conclusion of the hearing, Judge DeProspo held that "I do not credit the testimony, as given today in court by Mr. Wentland. I found it to be incredible in terms of my experience listening and assessing witnesses." (Ramage Decl. Exhibit A, p. 47:14-17). Applying the *Cedeno* factors, it is clear that the probity and relevance of Walter Wentland's prior sworn testimony weighs in favor of admissibility.

2

First, the prior judicial finding addressed Plaintiff Walter Wentland's veracity both in this case and generally. Mr. Wentland testified briefly about the July 22, 2018 incident itself as well as subsequent incidents involving his interactions with a probation officer. (Ramage Decl., Exhibit A, pp. 21-33). The Court did not specify any specific testimony as incredible, but instead deemed his entire testimony as unworthy of belief. As such, it is highly probative as to Plaintiff Walter Wentland's general lack of truthfulness. Next, the testimony provided by Plaintiff Wentland involved almost identical subject matter, in that it related to specific facts about the July 22, 2018 incident. Third, Plaintiff Walter Wentland's testimony was given under oath at a judicial proceeding. Fourth, Plaintiff Walter Wentland's falsehoods were not trivial — they were specific statements of fact which ran counter to other witness testimony and available evidence deduced at the hearing. (Ramage Decl., Exhibit A, pp. 21-33). Thus, the statements were significant and highly relevant to the ultimate issue before the Court. Fifth, there were no intervening credibility determinations regarding Mr. Wentland and his testimony at the hearing, which occurred approximately a year and a half from the time of the incident. Sixth, there was motive for Plaintiff Walter Wentland to lie during the sentencing hearing in that he desired to withdraw his guilty plea and avoid punishment. As such, Mr. Wentland understated his actions and made claims against both his prior attorney and the probation officer that interviewed him. An analogous motive is present at this trial; Mr. Wentland seeks to diminish his own confrontational conduct as he makes claims against Defendants to better himself through monetary gain. As such, it is highly likely that false statements under oath to benefit himself will also occur under oath at the trial of this matter. Finally, Plaintiff Walter Wentland has not offered an explanation for his misstatements.

As demonstrated, each "*Cedeno*" factor strongly weighs in favor of admissibility. Plaintiff Wentland's prior adverse credibility finding is entirely relevant and highly probative to his truthfulness and greatly outweighs any danger of unfair prejudice or confusion. Therefore, Defendants should be permitted to cross-examine Plaintiff Walter Wentland on this issue.

## POINT II

### DEFENDANTS SHOULD BE ALLOWED TO QUESTION PLAINTIFF WALTER WENTLAND ON HIS CONVICTION AND ALLOCUTION STEMMING FROM THE JULY 22, 2018 INCIDENT

As argued in Point I, *supra*, Federal Rule 608(b) permits the court to allow specific instances of conduct to be inquired on cross-examination if they are probative of the character for truthfulness or untruthfulness of the witness. Additionally, Fed. R. Evid. 801(d)(1)(A) permits cross-examination of a witness about a prior statement that was given under penalty of perjury at a judicial proceeding. *See* Fed. R. Evid. 801(d)(1)(A). In his deposition, Plaintiff Walter Wentland testified that Trooper Cornine charged at him, yelled at him, and then attacked him for no reason. (Ramage Decl. Exhibit B, pp. 74-75). Plaintiff Walter Wentland also testified at various times throughout his deposition that he was not given any commands by law enforcement, nor was he resisting or disobeying them. *Id*. at 90-91.

On November 9, 2021, Plaintiff Walter Wentland pled guilty to New York Penal Law § 195.05, Obstruction of Governmental Administration, for his actions on July 22, 2018. (Ramage Decl. Exhibit C). In his allocution, Plaintiff Walter Wentland admitted that he attempted to prevent Trooper Cornine from performing official functions by means of intimidation, force, or interference by yelling at Trooper Cornine while standing close to

4

him. *Id*. at 7, 8. Mr. Wentland's admissions that he attempted to prevent Trooper Cornine from performing an official function contradicts his deposition testimony regarding his behavior. (Ramage Decl., Exhibit B, pp. 74-75). Such inconsistencies, under oath, are highly probative of Mr. Wentland's character for truthfulness.

The Court should note that Defendants are not seeking admission of Plaintiff's underlying allocution, they simply seek to use the allocution for cross-exanimation, which is "generally the proper mechanism by which to test an adverse witness's credibility." *U.S. v. Shoreline Motors*, 413 Fed. Appx. 322, 329 (2d Cir. 2011) (citing *U.S. v. Masino*, 275 F.2d 129 (2d Cir. 1960)). Moreover, the prejudicial effect of permitting cross-examination into Plaintiff's allocution is minimal. Mr. Wentland's guilty plea is recent, does not involve an irrelevant crime, and involves the conduct at issue in *this* subject lawsuit. *See U.S. v. Kurland*, No. 20-CR-306 (S-1), 2022 WL 2669897, at *21 (E.D.N.Y. July 11, 2022) ("[a] limited scope invites minimal prejudice, as it does not introduce new criminal conduct that would simply serve to confuse the jury"). In sum, the probative value of Plaintiff Walter Wentland's inconsistent versions of the facts in his deposition and allocution strongly outweigh any undue prejudice that would arise from a jury being aware of a criminal conviction, and Defendants should be permitted to question him about those prior statements at trial.

## POINT III

### DEFENDANTS SHOULD BE ALLOWED TO QUESTION PLAINTIFF NICHOLAS WENTLAND ON HIS CONVICTION STEMMING FROM THE JULY 22, 2018 INCIDENT

Likewise, Defendants should also be permitted to question Plaintiff Nicholas Wentland on his conviction for intoxicated driving stemming from the July 22, 2018

incident. Here, Nicholas Wentland was arrested for driving while intoxicated after he drove his Ford F150 truck into a telephone pole, triggering a 911 call and subsequent response by Defendants to the accident scene. On March 5, 2019, Nicholas pled guilty to driving while intoxicated. For the following reasons, Defendants should be permitted to question Nicholas regarding his level of intoxication and his subsequent guilty plea of driving while intoxicated that evening.

First, the principal issue is whether Defendants used excessive force when effectuating Nicholas' arrest. In making that determination, a jury must decide whether the actions of Defendants were "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Among the facts and circumstances confronting Defendants on the evening of July 18, 2022 was Nicholas' intoxication "and how it may have influenced [his] actions and behavior." *Harris v. Donahue*, No. 15 Civ. 01274, 2017 WL 3638452, at * 3-4 (N.D.N.Y. Aug. 23, 2017). Thus, evidence of Nicholas' conviction for intoxicated driving is highly probative and substantially outweighs any potential prejudicial impact the evidence might have under the circumstances. *See id.* at *4. (plaintiff's arrest for driving while intoxicated and her blood alcohol content at the time of the alleged incident were highly probative to her excessive force claim and therefore admissible). *See also Hines v. Huff*, No. 16 Civ. 00503, 2019 WL 3574246, at * 4 (N.D.N.Y. Aug. 6, 2019) (evidence that plaintiff had marijuana in his system "relevant to the jury's consideration of the threat Defendants perceived when allegedly using force against Plaintiff"); *Kokoska v. Carroll*, No. 12 Civ. 1111, 2015 WL 1004303, at * 3 (D. Conn. March 6, 2015) (admitting

breathalyzer tests as relevant to "the facts and circumstances confronting the officers" at the time of the alleged use of excessive force because "[o]ne of the facts and circumstances confronting the officers was Plaintiff's alleged intoxication and how it may have influenced his actions and behavior.") (collecting cases). Accordingly, the jury is entitled to know the extent to which Nicholas' intoxication may have impacted his actions and behavior on the evening of July 22, 2018 and his conviction for intoxicated driving is frankly the best evidence of the level of his impairment that night.

Next, Nicholas' intoxication is "highly probative of [his] credibility because it reflects on his ability to perceive and recall the events of his arrest." *Id* at *3. *See also, Harris, supra* at *4. Moreover, the level of his intoxication — as evidenced by his conviction — is undoubtedly probative of his recollection of the events leading up to his arrest and Defendants' alleged use of excessive force. *See Ali v. Connick*, No. 11 Civ. 5297, 2016 WL 3002403, at * 3 (E.D.N.Y. May 23, 2016) ("Defendants are also correct that the level of Plaintiff's supposed drunkenness is probative of his memory and perception of the events on the night in question."); *see also*, *Nibbs v. Goulart*, 822 F. Supp. 2d 339 (S.D.N.Y. 2011) (citing *U.S. v. Di Paolo*, 804 F. 2d 225, 229 (2d Cir. 1986) (permitting defendants to introduce evidence of plaintiff's drug use on the day of the subject incident to impeach his perception of that day's events). Simply allowing Defendants to inquire as to whether Nicholas had been drinking prior to the incident is insufficient, and does not allow the jury to fully assess his credibility and the accuracy of his rendition of the events leading up to his arrest.

Finally, Nicholas' conviction for intoxicated driving is highly relevant to his claim for emotional distress damages. When questioned about his emotional distress claim at

deposition, Nicholas specifically indicated that his emotional distress stemmed from his decision to drive while intoxicated and the impact that decision had on his relationships with his mother, girlfriend, brother Walter, and close friend Andrew. (Ramage Dec., Exhibit D, pp. 129-132). Notably, both Walter and Andrew were in the car with him at the time of the accident with Walter suffering significant injuries. *Id.* at 129-132. Specifically, Nicholas testified: "I was just more mad at myself and how everything happened." *Id.* at 130. He further testified that he felt guilty because he almost killed his brother. *Id.* at 131. Notably, Nicholas did *not* testify that any of his emotional distress resulted from his interaction with law enforcement that night. Thus, testimony regarding Nicholas' driving while intoxicated and subsequent criminal conviction is highly probative of the root causes of his claimed emotional distress damages.

## POINT IV

**PLAINTIFFS SHOULD NOT BE PERMITTED TO INTRODUCE EVIDENCE REGARDING DEFENDANT CORNINE'S DISCIPLINARY INCIDENT**

Plaintiffs should be precluded from inquiring about the disciplinary incident of Defendant Cornine because such questioning directly conflicts with Fed. R. Evid. 404(b). Fed. R. Evid. 404(b) provides: "(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

Evidence of prior bad acts is not automatically admissible merely because the proponent has articulated some purpose unrelated to character. In *Huddleston v. United*

8

*States*, 485 U.S. 681, 688 (1988), the Supreme Court articulated a four-part test to evaluate whether other bad act evidence should be admitted under Fed. R. Evid. 404(b). Evidence of prior bad acts must be (1) offered for a proper purpose, such as proof of knowledge or identity; (2) relevant to an issue in the case pursuant to Fed. R. Evid. 402; (3) satisfy the probative-prejudice balancing test of Fed. R. Evid. 403; and (4) if admitted, the district court must give the jury an appropriate limiting instruction. Here, Plaintiff can make no showing that any potential disciplinary complaints – substantiated or otherwise – satisfies the first three part of the *Huddleston* test.

Defendant Cornine's disciplinary history would not be offered for any other purpose than to show character; is not relevant to any issue in the case; and would be substantially prejudicial. The Second Circuit has held that the evidence of an officer's prior bad acts are only admissible under Fed. R. Evid. 404(b) if the alleged prior act has a close nexus with the acts complained of by Plaintiff in his Complaint. *See Berkovich v. Hicks*, 922 F.2d 1018, 1022-23 (2d Cir. 1991) (police officer's past Civilian Complaint Review Board ("CCRB") complaints would only be admitted if they shared "unusual characteristics with the act charged or represent a unique scheme") (citing *United States v. Benedetto*, 571 F.2d 1246, 1249 (2d Cir. 1978)). Here, the sole disciplinary incident is a 2017 letter of censure that Defendant Cornine received following a single-vehicle accident in his patrol car. This singular incident shares no requisite "unusual characteristics" or "unique scheme" to be admissible. Absent any close nexus with the acts complained of, Plaintiffs should not be permitted to question Defendant Cornine about this incident.

Moreover, the potential for confusion or prejudice substantially outweighs any probative value considering there is no relevant basis to introduce such evidence. *Jean-*

*Laurent v. Wilkerson*, 461 F. App'x 18, 24 (2d Cir. 2012) (citations omitted). Accordingly, Plaintiffs should be precluded from questioning Defendant Cornine regarding his disciplinary histories.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motions *in limine*.

Dated: New York, New York
February 21, 2023

                                **LETITIA JAMES**
                                Attorney General
                                State of New York
                                <u>Attorney for State Defendants</u>

By:    /s/_____
Ian Ramage
Andrew Blancato
Assistant Attorneys General
28 Liberty Street, 18th Floor
New York, New York 10005
(212) 416-8659/6359

 /s/_____
Kellie Elizabeth Lagitch
Office of the Orange County Attorney
<u>Attorney for County Defendants</u>
15 Matthews Street
Goshen, NY 10924
(845) 291-3150

\* Electronic signature used with permission pursuant to SDNY ECF Rule 8.5(b).