UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
WALTER J. WENTLAND & NICHOLAS WENTLAND

                     Plaintiffs,

    -against-

NEW YORK STATE TROOPERS CONNOR
CORNINE, RAMIREZ, MATTHEW McKINNEY and
DEPUTIES ELLIOT BROOKS and RICHARD
WIEBOLDT of the ORANGE COUNTY SHERIFF'S
OFFICE,

                     Defendants.
-------------------------------------------------------------------x

No. 21-cv-06195 (PMH)


# MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*


                                     SUSSMAN & GOLDMAN
                                     *Attorneys for Plaintiffs*
                                     1 Railroad Avenue, Suite 3
                                     Goshen, New York 10924
                                     (845) 294-3991 [Tel]
                                     (845) 294-1623 [Fax]


Dated: March 7, 2023

## PRELIMINARY STATEMENT

By and through their undersigned counsel, plaintiffs Walter J. Wentland and Nicholas Wentland respectfully submit this memorandum of law in opposition to defendants' motions *in limine*. All defendants seek an order permitting them to cross-examine plaintiff Walter Wentland about a prior judicial credibility finding and about his criminal conviction and allocution arising from the July 22, 2018 incident; they also seek to cross-examine plaintiff Nicholas Wentland about his criminal conviction arising from the July 22, 2018 incident. The State Defendants further seek an order precluding plaintiffs from inquiring into defendant Cornine's disciplinary incident. For the reasons that follow, defendants' motions should be denied.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This is an action for excessive force brought by plaintiffs Walter and Nicholas Wentland against defendant New York State Troopers Connor Cornine, Daniel Ramirez and Matthew McKinney (collectively the "State Defendants") and defendant Orange County Sheriff's Deputies Elliott Brooks and Richard Wieboldt (collective the "County Defendants"). In short, plaintiffs allege that, during their encounter with the defendants on the evening of July 22, 2018, the defendants used excessive force against them and/or failed to intervene to stop the use of excessive force by each other.

## ARGUMENT

### Point I

#### Defendants should be precluded from cross-examining Walter Wentland about Judge DeProspo's credibility finding.

Defendants seek permission to question Walter Wentland about a prior credibility finding by Orange County Court Judge William DeProspo at the conclusion of a sentencing hearing in Walter's prior criminal matter. But Defendants' argument ignores critical facts about that criminal

1

proceeding warranting exclusion of such evidence, including, most critically, that the sentence and judgment of conviction entered by Judge DeProspo after making the asserted credibility finding were later reversed and vacated on appeal by the Appellate Division, Second Judicial Department. *See People v. Wentland*, 191 A.D.2d 704 (2d Dep't. 2021).[1] Before further addressing Defendants' legal argument, a brief recitation of the facts and circumstances surrounding Walter's criminal proceeding may be helpful and now follows.

After his encounter with defendants on July 22, 2018, Walter was charged with several offenses, including, *inter alia*, assault in the second degree, obstructing governmental administration in the second degree, resisting arrest and disorderly conduct. His son Nicholas was charged with, *inter alia*, driving while intoxicated. Both father and son were represented by the same attorney. The People offered a package plea deal by which Nicholas would plead guilty to DWI and receive a conditional discharge with associated penalties and Walter would plead guilty to attempted assault in the second degree and obstructing governmental administration in the second degree and, after successful completion of one year of interim probation, would be permitted to withdraw his plea to the felony attempted assault count and receive a conditional discharge on the misdemeanor count. Walter reluctantly agreed to this deal.

Thereafter, Walter retained his present counsel's firm to seek to withdraw his guilty plea, arguing that he was unduly coerced by the package nature of the plea offer and that, once this offer was made, it gave rise to a representational conflict that his prior counsel did not advise him about. In other words, he argued that, since his prior attorney's interest in obtaining the best deal for Nicholas conflicted with his own interests of maintaining his innocence, his prior counsel should have at least advised him of this conflict and his right to seek different counsel. As a result, he

---

[1] As discussed in Point II herein, upon remand, Walter eventually resolved the charges with a plea of one misdemeanor count of obstructing governmental administration in the second degree.

argued, his plea was tainted by the coercive nature of the deal and the ineffective assistance of his prior counsel in failing to properly address the representational conflict.

Judge DeProspo denied Walter's motion to withdraw his plea and set the matter down for sentencing.  Based on statements Walter made to the Probation Department during his PSI interview, Judge DeProspo scheduled a hearing pursuant to *People v. Outley*, 80 N.Y.2d 702 (1993), to determine whether Walter violated his plea warnings, thus warranting an enhanced sentence.  It was at the conclusion of that hearing that Judge DeProspo made the remark about Walter's credibility that Defendants seek to question him about, *to wit*, "I do not credit the testimony, as given today in court by Mr. Wentland. I find it to be incredible in terms of my experience listening and assessing witnesses." *See* Ramage Decl., Exhibit A at 47.   Judge DeProspo then departed from the plea deal and sentenced Walter to a concurrent term of six months incarceration on each of the two counts.

Thereafter, Walter timely filed his appeal and, in doing so, sought and obtained from the Second Department a stay of his sentence pending appeal.  On appeal, he argued both that Judge DeProspo erred in refusing to vacate his plea and also by finding at the *Outley* hearing that he had violated the plea warnings justifying an enhanced sentence.  Thus, to the extent Judge DeProspo made an adverse credibility finding to support his conclusion after the hearing that Walter violated the plea warnings justifying an enhanced sentence, Walter appealed that determination.

The Second Department concluded that Judge DeProspo erred in refusing to grant Walter's motion to vacate his plea because "the record suggests that the defendant's plea of guilty was induced by consideration other than his desire to obtain more favorable sentencing for himself, and that the defendant was deprived of representation that was singlemindedly devoted to his best interests as required by both the Constitution of the United States and the New York State

3

constitution." *Wentland*, 191 A.D.3d at 707 (quotations & citations omitted).  Thus, the Court vacated the guilty plea, reversed the judgment, and remanded the matter for further proceedings. *See Id.* at 704, 707-08.

We now turn to the legal argument.  Fed. R. Evid. 608(b) permits inquiry on cross examination into specific instances of a witness's conduct if probative of the witness's character for untruthfulness.  In applying this rule, the court is guided by Rules 403 and 611, which permit it to exercise its broad discretion to limit the scope of cross examination to prevent harassment, confusion and waste and to preclude even relevant evidence where same is substantially outweighed by  the risk of unfair prejudice, confusion and delay. *See* Fed. R. Evid. 403 and 611; *See also United States v. White*, 692 F.3d 235, 248 (2d Cir. 2012).

Under this rule, the Second Circuit has held that "a witness can be cross-examined based on prior occasions when his testimony in other cases had been criticized by a court as unworthy of belief." *White*, 692 F.3d at 248 (quotations & citations omitted).  In determining whether a prior judicial credibility determination is relevant and probative, the Second Circuit has articulated seven non-exhaustive factors courts may consider, including:

> (1) Whether the prior judicial finding addressed the witness's veracity in that specific case or generally; (2) whether the two sets of testimony involved similar subject matter; (3) whether the lie was under oath in a judicial proceeding or was made in a less formal context; (4) whether the lie was about a matter that was significant; (5) how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness; (6) the apparent motive for the lie and whether a similar motive existed in the current proceeding; and (7) whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible.

*Id.* at 249 (quotations and citations omitted).  This is not a rigid test, and a court is free to consider any or all of these factors, or even others. *See Id.* at 249 and n. 7.

Initially, while the Second Circuit has not yet expressly limited this rule to criminal cases, as the district court for the Western District of New York recently recognized, it seems clear that, at the very least, the justifications for this rule are more relevant and stronger in criminal cases "where based on Sixth Amendment rights, the cross-examination rights of a defendant as to a government witness are particularly robust." *See Junger v. Singh*, 514 F.Supp.3d 579, 598 (W.D.N.Y. 2021). Indeed, as the Second Circuit explained in *White*: In applying [Rule 608(b)], while a district court may impose reasonable limits on cross examination to protect against, e.g., harassment, prejudice, confusion, and waste, it must also give wide latitude *to a defendant in a criminal case to cross-examine government witnesses*." 692 F.3d at 248 (quotations & citations omitted) (alterations accepted) (emphasis added). Thus, the fact that this is not a criminal case involving the same constitutional concerns should tip the scale against admissibility.

Further, although not explicitly one of the non-exhaustive factors articulated in *White*, it seems that, to qualify as a prior judicial "finding" as to a witness's credibility, the "finding" must have been material to some particular holding of the court. For instance, in *White*, the prior judicial finding about which the defendant sought to elicit testimony involved a prior court's decision to grant a motion to suppress evidence based on its disbelief of the government witness's testimony. *See* 692 F.3d at 241 and n. 3. In other words, the credibility finding was material to the court's suppression ruling. The same was true in *United States v. Cedeno*, 644 F.3d 79, 81 (2d Cir. 2011), where the defendant sought to question the government witness about a state appellate court's conclusion that he "patently tailored his testimony to avoid suppression of evidence discovered at a traffic stop," which finding supported the court's decision to suppress the evidence.

It should follow that, if the ultimate holding of the court that was supported by the adverse credibility finding is later vacated, the credibility determination is no longer material and cannot

constitute a "specific instance of conduct" under Rule 608.  At the very least, such vacatur should significantly diminish, if not entirely eliminate, the probative value, if any, such finding may have otherwise carried.

Here, Judge DeProspo made his credibility finding to support his conclusion that Walter violated his plea warnings, thus warranting an enhanced sentence.  Walter appealed County Court's sentence and judgment of conviction, including its conclusions at the *Outley* hearing.  The Second Department then vacated Walter's guilty plea and granted his motion to withdraw his plea, which led the Court to reverse and vacate the entire judgment of conviction.  To be sure, the Court decided the appeal on the issue of Walter's motion to vacate his guilty plea, and so it did not reach his arguments as to why County Court also erred concluding at the *Outley* hearing that Walter violated his plea warnings. *See Wentland*, 191 A.D.3d at 707 ("In light of our determination, we need not reach the defendant's remaining contentions.").  But, this does not change the fact that the Second Department's decision fully vacated the judgment of conviction, which had included the enhanced sentence in support of which Judge DeProspo had made his credibility determination.  As such, at the time the conviction was vacated, Judge DeProspos's findings and conclusions at the *Outley* hearing were no longer material to any judicial holding, order or judgment, and, thus, should not be deemed a specific instance of conduct under Rule 608.  At the very least, any potential relevance or probative value of same should be deemed significantly diminished, if not entirely eliminated.

Moreover, it should be noted that, while the Second Department did not expressly resolve Walter's argument that County Court erred in imposing an enhanced sentence at the *Outley* hearing, its conclusion that County Court erred in not granting his motion to withdraw his plea, and in its own decision to grant that motion, contravenes Judge DeProspos's credibility

determination.  Indeed, at the *Outley* hearing, Walter testified about the reasons why he reluctantly pled guilty and then sought to vacate his plea :

> Q:   Did you speak with Ms. Bivona about any plans you had that deal with the guilty plea you had entered?
>
> A:   Yes, I did.
>
> Q:   Can you tell us – tell the judge, particularly, what you told her?
>
> A:   I told her I was going to fire Brandon Ozman and hire a new attorney.
>
> Q:   Did you tell her why?
>
> A:   Yeah.
>
> Q:   What did you tell her?
>
> A:   I told her that I felt wrong about pleading guilty, and you know, they used my son as a wedge, and pretty much Brandon said that if I didn't plead guilty to that chances are they were going to push for my son to go to jail.  Chances are, he said, I might win in a trial, but he said my son wouldn't.

*See* Ramage Decl., Exhibit A at 23-24.  This was part of the testimony Judge DeProspo found so "incredible."  In reversing Judge DeProspo's refusal to vacate the guilty plea, and in granting Walter's motion, the Second Department essentially credited these very assertions Walter made at the *Outley* hearing. *See Wentland*, 191 A.D.3d at 705-07.

Thus, even if not expressly addressing Judge DeProspo's specific remark about Walter's credibility, the Second Department's holding certainly casts doubt thereon and, at least implicitly, contravenes Judge DeProspo's credibility finding.  As such, if not a complete repudiation of Judge DeProspo's finding, rendering it meaningless, at the very least, under the fifth *Cedeno* factor, the

Second Department's decision should be viewed as an "intervening credibility determination regarding the witness," weighing against admissibility.

Finally, even if after considering the foregoing arguments the Court concludes that Judge DeProspo's credibility determination carries some probative value as to Walter's character for truthfulness, such limited probative value is substantially outweighed by the risk of prejudice to and confusion of the jury. Indeed, permitting such evidence risks allowing the jury to place undue weight on a judge's determination as to Walter's credibility, thus usurping its role as fact-finder. It also puts Walter at a disadvantage because, to counter this evidence, he would be required to forgo his rights under Fed. R. Evid. 609 to avoid evidence of his conviction and then delve into the facts and circumstances of his criminal proceeding, including the appellate process, and his eventual later conviction, which was not based on the same credibility determination. Doing so would cause unnecessary delay and confusion and likely even further prejudice Walter.

### Point II

**Defendants should be precluded from offering any evidence of plaintiff Walter Wentland's arrest and criminal conviction history, including any reference to or use of his allocution.**

After he succeeded in vacating his initial plea as discussed above, on remand, Walter Wentland eventually resolved all charges by a plea to one count of obstructing governmental administration in the second degree, with a sentence to a conditional discharge. In his plea allocation, he did not admit to striking any officer or to using any physical force against them.

Defendants now seek permission to question Walter Wentland about his conviction and allocation. Specifically, while they do not seek to affirmatively introduce his allocution, they "seek to use the allocation for cross-examination," contending that same contradicts his testimony in this matter. Respectfully, Defendants' argument is misplaced, and should be rejected.

8

As an initial matter, it is clear that, under Fed. R. Evid. 609, Defendants may not introduce evidence of Walter Wentland's conviction to impeach him on cross-examination because the offense of which he was convicted is a misdemeanor that does not involve the commission of a false act or making of a deceptive statement. *See* Fed. R. Evid. 609(a); N.Y. Penal L. § 195.05. In their motion, Defendants appear to seek an end run around this result by contending that Walter Wentland's allocution contradicts his testimony in this case. But their argument is misplaced, and the Court should reject this maneuver.

First, neither of the rules Defendants cite support their argument. Rule 608(b) permits, on cross examination, inquiry into specific instances of conduct "if they are probative of the witness's character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). But what is the specific instance of conduct here – that Walter Wentland allocated to a crime that does *not* require a showing [or admission, in the case of a plea] of dishonesty? This, in itself, cannot constitute a "specific instance" of untruthful conduct and, instead, seeks to circumvent Rule 609's preclusion of evidence of a criminal conviction.

Likewise, while Fed. R. Evid. 801(d)(1)(A) provides that a declarant-witness's prior out-of-court statement may be admitted for the truth of the matter asserted [*i.e.*, is not hearsay] if the witness's prior statement was made under penalty of perjury and is otherwise inconsistent with his trial testimony, there still must be a basis to get to the prior statement. Of course, here, under Rule 609, evidence of Walter Wentland's criminal conviction is inadmissible for the purpose of impeachment, and so there is no basis for Defendants to question him about his allocution to the crime of conviction.

Instead, defendants seem to argue that they should be permitted to confront Walter Wentland with his allocution because his expected testimony in this case will be inconsistent

therewith.  But they are mistaken.  As Defendants point out, in his allocution, Walter Wentland admitted that he "attempt[ed] to prevent Trooper Cornine from performing [his] official functions [of maintaining the accident scene] by means of intimidation, force or interference with him." *See* Ramage Decl., Exhibit C at 7-8.  Given the disjunctive nature of the foregoing statutory language of obstructing governmental administration, Wentland then specified how he committed the offense – that he "attempted to interfere with [Cornine's] performance of those functions by yelling at him while standing close to him." *See* Ramage Decl., Exhibit C at 7-8.  In other words, while the statutory language includes worlds like "intimidation" and "force," the full allocution demonstrates that Walter Wentland did not admit to engaging in that conduct; rather he admitted only to attempting to prevent Cornine from maintaining the accident scene by yelling at him while standing close to him. *See Id.*

This is not inconsistent with his testimony in this case.  Indeed, here Walter Wentland never denied yelling at the scene of the incident or at Cornine while, in a panic, he searched for his sons, whom he understood had just been involved in a severe car accident.  Nor did he deny that his yelling at Cornine while trying to find his son may have interfered with Cornine's function of maintaining the accident scene.  Nor is the fact that Wentland may have attempted to distract Cornine from what he was doing in his own attempt to find his sons at all inconsistent with his testimony in this action that Cornine bum rushed, yelled at and attacked him.  In fact, a jury could find it fully consistent – that is that Wentland's behavior angered Cornine to the point that Cornine reacted with the use of excessive force.  As such, the allocution does not constitute a prior inconsistent statement, and so there is no basis to permit questioning about it.

### Point III

**Defendants should be precluded from offering any evidence of plaintiff Nicholas Wentland's criminal conviction.**

After his encounter with defendants on July 22, 2018, plaintiff Nicholas Wentland was charged with, *inter alia*, driving while intoxicated under N.Y. V.T.L. § 1192(3) and, later, pled guilty to this offense. Defendants seek permission to inquire of Nicholas Wentland about this conviction, but, respectfully, the Court should deny this request.

As an initial matter, similar to his father's conviction, evidence of Nicholas' conviction is inadmissible for the purpose of impeachment under Fed. R. Evid. 609 because it is a misdemeanor that does not involve the commission of a false act or making of a deceptive statement. *See* Fed. R. Evid. 609(a); N.Y. V.T.L. § 1192(3). Defendants do not appear to seek to use his conviction for this purpose and, to the extent they do, their request should be denied.

Nor is there any other basis to admit this evidence. Indeed, the fact the he was convicted of this offense is not relevant to the central issue in this case, which is whether the defendants used excessive force against him on the evening in question. To be sure, whether he consumed alcohol and was intoxicated that night might, as defendants suggest, have some relevance, but defendants need not establish that he was also convicted of DWI to establish that he consumed alcohol and was intoxicated, which he does not deny.

Arguing otherwise, defendants contend that evidence of this conviction is relevant because, whether Nicholas Wentland was intoxicated is relevant to the manner in which he comported himself that evening. Specifically, they assert that "the jury is entitled to know *the extent* to which Nichols' intoxication may have impacted his actions and behavior . . . and his conviction . . . is frankly *the best evidence* of his impairment that night" and that "the level of his intoxication – as

11

evidenced by this conviction – is undoubtedly probative of his recollection of the events leading up to his arrest and Defendants' alleged use of excessive force." Def. Mem. at 7 (emphasis added).

The problem with this argument is that Nicholas' plea establishes nothing about the "extent" or "level" of his intoxication, and his conviction is not the "best evidence" thereof. Indeed, Nicholas pled guilty to a so-called "common law DWI" charge under Section 1192(3) of the Vehicle and Traffic Law, which does not require any showing of any particular blood alcohol level, but only that the defendant "operate[d] a motor vehicle while in an intoxicated condition." *See* N.Y. V.T.L. § 1192(3).  In other words, as a factual matter, while his conviction establishes he was "intoxicated," it is not probative as to the "extent" or "level" of his intoxication [*e.g.*, his blood alcohol content], as defendants seem to suggest.  None of this is to suggest that defendants' counsel cannot question this plaintiff about his use of alcohol on the evening in question.  But this does not justify the leap proposed.

Finally, defendants contend that evidence of Nicholas' conviction is relevant to his claim of emotional distress because he testified at deposition that the event impaired his relationship with his brother because he felt guilty that his brother was injured in the accident.  But the fact that he was later convicted of a crime bears no relevance on this issue.  Again, questions may be posed about the etiology of his emotional distress without inquiring into his conviction.

In any event, even if the conviction had any relevance, the limited probative value thereof is substantially outweighed by the risk of prejudice.  Indeed, evidence of his conviction is excludable under Rule 609 for a reason, namely the risk of prejudice to a party that the jury will judge him based upon his criminal conviction rather than the facts of the case.  To allow evidence of Nicholas' conviction here simply to bolster the proof that he had consumed alcohol that evening, which he admits, has only marginal, if any probative value and runs the risk of prejudicing the jury

in the same way the drafters of Rule 609 sought to avoid.  Moreover, a lay jury likely will not understand the differences between the different types of DWI offenses and might improperly presume from the fact of a DWI conviction that Nicholas was more intoxicated than he actually was.  As such, allowing evidence of the conviction runs the risk of confusing the jury and leading it to assume a factual conclusion unsupported by that evidence.

### Point IV

**The substance of Cornine's driving history is relevant.**

The State Defendants contend that Cornine's personnel file contains one disciplinary incident – a Letter of Censure involving a single vehicle accident, which is unrelated an irrelevant to this matter and, thus, should be precluded.  This is not accurate.  First, Cornine has two Letters of Censure – in addition to the one State Defendants cite, he also has a July 14, 2020 Letter of Censure involving his failure to properly inspect his patrol car after transporting a prisoner, thereby failing to discover cash the prisoner had secreted into a crevice in the back seat.  *See* Goldman Decl., Exhibit 1.

While plaintiffs do not presently intend to seek to introduce into evidence the fact that Cornine was so disciplined, the substance of the January 30, 2018 Letter of Censure is relevant. As documented therein, the incident involved Cornine swerving his vehicle to avoid hitting a deer while driving in the Town of Minisink, thereby losing control of his vehicle and crashing into a utility pole.  *See* Goldman Decl., Exhibit 1 at WENTLAND_000395.  This is relevant because Nicholas Wentland claims that, although he consumed alcohol that evening, the reason he lost control of his vehicle is because he swerved to avoid hitting a deer, not because of the level of his intoxication.  In other words, Cornine's own personal experience driving on roads in the same town where Nichols crashed his car, and in a remarkably similar manner,  makes credible Nicholas'

13

explanation for the accident.  Plaintiffs need not, and do not intend to, elicit the fact that Cornine

was also disciplined for this, and so the risk of any unfair prejudice is reduced.

Finally, as State Defendants have not expressly sought to preclude evidence of the July 14,

2020 Letter of Censure, plaintiffs do not address this letter, except to note that, should Defendants

open the door by eliciting testimony suggesting that Cornine has a stellar or spotless performance

record, then, of course, plaintiffs' reserve the right to seek to introduce both Letters of Censure to

demonstrate otherwise.

## CONCLUSION

For all of the foregoing reasons, defendants' motions *in limine* should be denied.

Dated:  Goshen, New York
          March 7, 2023

                                       Respectfully submitted,

                                       SUSSMAN & GOLDMAN
                                       *Attorneys for Plaintiffs*

                                       By:
                                             Jonathan R. Goldman (JG8710)
                                           1 Railroad Avenue, Ste. 3
                                           P.O. Box 1005
                                         Goshen, NY 10924
                                         (845) 294-3991 [Tel]
                                         (845) 294-1623 [Fax]
                                         jgoldman@sussman.law

TO:    Ian Ramage, Esq.
        Asst. Attorney General
        OFFICE OF THE NYS ATTORNEY GENERAL
        *Attorneys for Defendants Cornine, Ramirez & McKinney*
        28 Liberty Street
        New York, New York 10005
        (212) 416-8659 [Tel]
        (212) 416-6075 [Fax]
        Ian.Ramage@ag.ny.gov

Kellie E. Lagitch, Esq.
Asst. County Attorney
OFFICE OF THE ORANGE COUNTY ATTORNEY
*Attorneys for Defendants Brooks and Wieboldt*
255-275 Main Street
Goshen, New York 10924
(845) 291-3150 [Tel]
(845) 378-2374 [Fax]
klagitch@orangecountygov.com

15