```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
WALTER J. WENTLAND and NICHOLAS            :
WENTLAND,                                  :      21-CV-6195 (PMH)
                                           :
                    Plaintiffs,            :
                                           :
         - against -                       :
                                           :
NEW YORK STATE TROOPERS CONNOR             :
CORNINE, DANIEL RAMIREZ, MATTHEW           :
McKINNEY and DEPUTIES ELLIOT BROOKS,       :
and RICHARD WIEBOLDT of the ORANGE         :
COUNTY SHERIFF'S OFFICE,                   :
                                           :
                    Defendants.            :
------------------------------------------------------------------ X
```

# DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTIONS IN LIMINE

| | |
|---|---|
| Kellie E. Lagitch | Ian Ramage |
| Chief Assistant County Attorney | Andrew Blancato |
| Carol C. Pierce | Assistant Attorneys General |
| Deputy County Attorney | LETITIA JAMES |
| RICHARD B. GOLDEN | Attorney General |
| Orange County Attorney | State of New York |
| <u>Attorney for County Defendants</u> | <u>Attorney for State Defendants</u> |
| 255-275 Main Street | 28 Liberty Street, 18th Floor |
| Goshen, New York 10924 | New York, New York 10005 |

i

## PRELIMINARY STATEMENT

Defendants New York State Troopers Connor Cornine, Daniel Ramirez and Matthew McKinney and Orange County Deputies Elliott Brooks and Richard Weiboldt (collectively "Defendants") respectfully submit this Joint Reply Memorandum of Law, in reply to plaintiff Walter Wentland and Nicholas Wentland's ("Plaintiffs") memorandum of law in opposition to Defendants' motion *in limine* and in further support of Defendants motions *in limine*. State Defendants respectfully seek an order: (1) allowing Defendants to cross-examine Plaintiff Walter Wentland on a prior judicial credibility finding; (2) allowing Defendants to cross-examine Plaintiff Walter Wentland on his criminal conviction and allocution arising from the July 22, 2018 incident; (3) allowing Defendants to cross-examine Plaintiff Nicholas Wentland on his criminal conviction arising from the July 22, 2018 incident; and (4) precluding Plaintiffs from inquiring into the Defendant Cornine's singular disciplinary incident.

## ARGUMENT

### POINT I

**THE APPELLATE DIVISION'S DECISION AND ORDER DOES NOT PRECLUDE DEFENDANTS FROM QUESTIONING PLAINTIFF WALTER WENTLAND ON A PRIOR JUDICIAL CREDIBILITY FINDING**

Defendants should be permitted to question Plaintiff Walter Wentland on a prior judicial credibility finding about the events in this case. As provided in Defendants' Joint Motion in Limine, Federal Rule 608(b) permits certain conduct to be inquired on cross-examination "if they are probative of the character for truthfulness or untruthfulness of…the witness." Fed R. Evid. 608(b); *see also*, *United States v. Cedeno*, 644 F.3d 79, 82-83 (2d Cir. 2011). In this matter, Plaintiff Walter Wentland testified on at the sentencing

hearing in his criminal case stemming from the July 22, 2018 incident. *See* Ramage Decl, Exhibit A, ECF No. 45. At the conclusion of the hearing, Judge DeProspo held that "I do not credit the testimony, as given today in court by Mr. Wentland. I found it to be incredible in terms of my experience listening and assessing witnesses." (Ramage Decl. Exhibit A, p. 47:14-17). Applying the *Cedeno* factors discussed in Defendants' Joint Motion in Limine,[1] the probity and relevance of Walter Wentland's prior sworn testimony weighs in favor of admissibility in this matter.

In their opposition, Plaintiffs argue that the Second Department's Decision and Order reversing Walter Wentland's plea agreement warrants preclusion of Judge DeProspo's credibility finding. *See* Plaintiffs' Memo of Law, pp, 2 – 8. It should not. The Second Department's 2021 Decision and Order reversed Walter Wentland's prior plea agreement as it was based on a conflict issue with his attorney and a "package deal" presented to both Nicholas and Walter Wentland that was favorable to Nicholas. *See People v. Wentland,* 191 A.D.3d 704 (2d Dept. 2021). As counsel acknowledges in their opposition, the Second Department's decision specifically did not reach the following determinations: (a) whether the Court erred in concluding that he violated his plea warning at the *Outley* hearing; and (b) whether Judge DeProspo's credibility determination was erroneous. *See* Plaintiffs' Memo of Law, p. 6*; see also Wentland,* 191 A.D.3d at 704. To the contrary, because the Court determined that Walter's plea should be vacated due to the conflict issue, they did not address any of Walter's remaining contentions. *Id.* Thus, the Second Department's holding in no way contravenes Judge DeProspo's credibility finding.

---

[1] The same factors were reiterated in *United States. v. White,* 692 F.3d 235, 248 (2d Cir. 2012).

The Appellate Division likely did not find Judge DeProspo's credibility determination to be erroneous because it is undisputed that Defendant Walter Wentland made significant conflicting statements under oath to Judge DeProspo. In fact, Plaintiffs' current counsel – who was also counsel at the sentencing hearing – admitted to Judge DeProspo in that same sentencing hearing that Mr. Wentland previously lied to the Court.

"…And in doing so, he lied. He lied to the Court." Ramage Decl. Exhibit A, p. 37: 6-7.

"…I submit to you it's impossible for the Court to determine that my client lied to Probation. **My client has already indicated who he lied to. He lied to you**. And he has explained to you why he lied to you." Ramage Decl. Exhibit A, p. 39: 5-7 (emph added).

"…He had a motive to lie here. He has explained that motive." Ramage Decl. Exhibit A, p. 39: 16-17.

If on direct examination, Plaintiffs' counsel wants to elicit the circumstances for why Mr. Wentland lied to Judge DeProspo, he can do so. But Walter Wentland lied to a judge, admitted he lied, and that judge then found his subsequent testimony to lack credibility. This finding is unsurprising, uncontroverted, and highly probative of Mr. Wentland's truthfulness in general and greatly outweighs any danger of unfair prejudice or confusion to the jury. Thus, Defendants should be permitted to cross-examine Plaintiff Walter Wentland on these issues.

## POINT II

### DEFENDANTS SHOULD BE PERMITTED TO QUESTION PLAINTIFF WALTER WENTLAND ON HIS CONVICTION AND ALLOCUTION ON <u>CROSS-EXAMINTION TO DETERMINE CREDIBILITY</u>

As provided in Defendants' Joint Motion in Limine, it is undisputed that Plaintiff Walter Wentland made numerous inconsistent statements and/or admitted lies under oath to the County Court regarding the events pertaining to this subject lawsuit, some of which

occurred during his allocution and sentencing. Accordingly, Defendants should be permitted to cross-examine Mr. Wentland regarding these inconsistencies to determine his credibility. Moreover, Defendants should be permitted to question Plaintiff Walter Wentland about his plea of guilty wherein he admits to preventing Trooper Cornine from performing his official functions, which directly contradicts his deposition testimony.

Plaintiffs argue, that because the plea to obstruction of governmental administration does not involve the commission of a false act or making of a deceptive statement, that the conviction and allocation should be precluded. However, whereas here, Mr. Wentland's statements made under oath are inconsistent with his deposition testimony, they are highly probative to determine his credibility. Moreover, the conviction itself, is probative in that it: (a) involves the events that are the subject of this lawsuit; and (b) his voluntary plea to a conviction and allocation is contrary to his claims herein and to his deposition testimony in which he portrays himself as an innocent victim of excessive force. Moreover, because the allocation and conviction are intertwined, precluding Defendants from questioning Mr. Wentland on his conviction and allocation deprives the jury of the ability to fully assess the credibility of his version of the events that transpired on July 22, 2018.

### POINT III

**DEFENDANTS SHOULD BE PERMITTED TO QUESTION
<u>PLAINTIFF NICHOLAS WENTLAND'S CONVICTION</u>**

Defendants should be permitted to question Plaintiff Nicholas Wentland regarding his conviction for driving while intoxicated on the night of July 22, 2018 as it is highly probative to the jury's determination of: (a) what the Defendants were confronted with and how Nicholas's intoxication influenced his actions and behaviors; (b) Nicholas's

credibility and his ability to perceive and recall the events of that evening; and (c) Nicholas's claims for emotional distress, given his own deposition testimony.

As provided in Defendants' Joint Motion in Limine, Nicholas Wentland was arrested for driving while intoxicated after he drove his Ford F150 truck into a telephone pole, triggering a 911 call and subsequent response by Defendants to the accident scene. On March 5, 2019, Nicholas pled guilty to driving while intoxicated. Among the facts and circumstances confronting Defendants on the evening of July 18, 2022 was Nicholas' intoxication "and how it may have influenced [his] actions and behavior." *Harris v. Donahue*, No. 15 Civ. 01274, 2017 WL 3638452, at * 3-4 (N.D.N.Y. Aug. 23, 2017). Thus, evidence of Nicholas' conviction for intoxicated driving is highly probative of Nicholas's actions and behavior and substantially outweighs any potential prejudicial impact the evidence might have under the circumstances. See *id.* at *4. (plaintiff's arrest for driving while intoxicated and her blood alcohol content at the time of the alleged incident were highly probative to her excessive force claim and therefore admissible). *See also Hines v. Huff*, No. 16 Civ. 00503, 2019 WL 3574246, at * 4 (N.D.N.Y. Aug. 6, 2019) (evidence that plaintiff had marijuana in his system "relevant to the jury's consideration of the threat Defendants perceived when allegedly using force against Plaintiff").

Further, Nicholas' intoxication is "highly probative of [his] credibility because it reflects on his ability to perceive and recall the events of his arrest." *Id* at *3. See also, *Harris*, supra at *4. Moreover, the level of his intoxication — as evidenced by his conviction — is undoubtedly probative of his recollection of the events leading up to his arrest and Defendants' alleged use of excessive force. *See Ali v. Connick,* No. 11 Civ. 5297, 2016 WL 3002403, at * 3 (E.D.N.Y. May 23, 2016) ("defendants are also correct that the

5

level of plaintiff's supposed drunkenness is probative of his memory and perception of the events on the night in question."); *see also, Nibbs v. Goulart*, 822 F. Supp. 2d 339 (S.D.N.Y. 2011) (citing *U.S. v. Di Paolo*, 804 F. 2d 225, 229 (2d Cir. 1986) (permitting defendants to introduce evidence of plaintiff's drug use on the day of the subject incident to impeach his perception of that day's events). Simply allowing Defendants to inquire as to whether Nicholas had been drinking prior to the incident is insufficient and does not allow the jury to fully assess his credibility and the accuracy of his rendition of the events leading up to his arrest.

Finally, Nicholas's conviction for intoxicated driving is highly relevant to his claim for emotional distress damages. When questioned about his emotional distress claim at his deposition, Nicholas specifically indicated that his emotional distress stemmed from his decision to drive while intoxicated and the impact that decision had on his relationships with his mother, girlfriend, brother Walter, and close friend Andrew. *See* Ramage Dec., Exhibit D, pp. 129-132. Specifically, Nicholas testified: "I was just more mad at myself and how everything happened." *Id*. at 130. Nicholas did not testify that any of his emotional distress resulted from his interaction with law enforcement that night. Thus, testimony regarding Nicholas's driving while intoxicated and subsequent criminal conviction is highly probative of the root causes of his claimed emotional distress damages.

In opposition, Plaintiffs admit that the conviction has probative value but argue that it "runs the risk of prejudicing the jury" in that "a lay jury likely will not understand the difference between the different types of DWI offenses and might improperly presume from the fact of a DWI conviction that Nicholas was more intoxicated than he actually was." Pl. Memo of Law in Opp. pp.12 – 13. Plaintiffs appear to be either

6

confusing the issues or severely underestimating the comprehension of a jury. Nicholas has pled guilty to driving while intoxicated on the night of July 22, 2018. Defendants do not seek to offer extrinsic evidence of this fact, but feel they should be permitted to reference the fact he pled and allocuted to driving while intoxicated. Should Nicholas wish to tell the jury that he was intoxicated but impervious to the effects of alcohol, he is welcome to do so. But Defendants should not be precluded from referencing his own admission about his behavior that night. Absent any case law to the contrary (and Plaintiffs do not cite any), this inquiry should be permitted at trial.

## POINT IV

### PLAINTIFFS SHOULD NOT BE PERMITTED TO INTRODUCE EVIDENCE REGARDING DEFENDANT CORNINE'S DISCIPLINARY INCIDENT

No reference to Trooper Cornine's disciplinary history should be permitted at trial. As provided in Defendants' Joint Motion in Limine, the Second Circuit has held that evidence of an officer's prior bad acts is admissible under Fed. R. Evid. 404(b) only if the alleged prior act has a close nexus with the acts complained of by a plaintiff in his complaint. *See Berkovich v. Hicks*, 922 F.2d 1018, 1022-23 (2d Cir. 1991) (police officer's past Civilian Complaint Review Board ("CCRB") complaints would only be admitted if they shared "unusual characteristics with the act charged or represent a unique scheme") (citing *United States v. Benedetto*, 571 F.2d 1246, 1249 (2d Cir. 1978)).

Trooper Cornine's disciplinary history is completely unrelated to his actions at issue in this matter. Trooper Cornine was cited in 2018 for failing to drive sufficiently careful after getting into a car accident and, based on the representations made by Plaintiff, in 2020 for failing to adequately search his patrol car after transporting a

7

prisoner.[2] He was not cited for force, malice, nor abuse of authority. There is no *single* trait, let alone unusual characteristics, shared between Trooper Cornine's behavior in this matter and the incidents in his disciplinary history.

Plaintiffs do not argue otherwise. In his opposition to Defendants' Motion in Limine, Plaintiffs offer no justification at all for why Trooper Cornine's 2020 citation is relevant and claim Trooper Cornine's 2018 citation is relevant not because his driving infraction is similar to how he acted on the night of the subject incident, but because it's similar to how *plaintiff* Nicholas Wentland acted on the night of the subject incident. "Cornine's own personal experience driving on the roads in the same town where Nicholas crashed his car, and in a remarkably similar manner, makes credible Nicholas's explanation for the accident." Pl. Memo of Law in Opp., pp. 13 – 14. This explanation does not make sense. Evidence of an individual's prior bad act is admissible under Fed. R. Evid. 404(b) if his or her own *prior* act sufficiently resembles his or her own *subject* act. *See Huddleston v. United States*, 485 U.S. 681 (1988) (upholding defendant's conviction of possessing stolen property upon finding evidence of defendant's previous acts of stealing televisions was properly admitted under rule 404(b)). It does not permit evidence of a defendant's prior bad act to prove conformity with a plaintiff's bad act. Plaintiffs offer no authority in support of this claim, likely because none exists, as this proposition would violate Rule 404(b) and Rule 403, as a jury would almost certainly be confused as to why Trooper Cornine's prior car accident is relevant to the issues to be

---

[2] This latter incident was unknown to this Office at the time the underlying Motion in Limine was filed, likely because it occurred subsequent to the incident in question. It has since been verified. It's also been confirmed that no other discipline against the Trooper Defendants – either before or after the subject accident – is known to the undersigned.

decided by them. For these reasons, any reference to Trooper Cornine's disciplinary history should be excluded.

## CONCLUSION

In sum, there have been both judicial findings and verbal admissions made about or by Plaintiffs regarding their behavior on July 22, 2018. These conclusions would undoubtedly aid a jury in determining whether the force used by Defendants on that night was reasonable. Defendants respectfully believe that this evidence, rather than the driving record of Trooper Cornine, should be permitted at trial. For all the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motions *in limine*.

Dated: New York, New York
       March 14, 2023

                           **LETITIA JAMES**
                           Attorney General
                           State of New York
                           <u>Attorney for State Defendants</u>
By:
                           <u>/s/                    </u>
                           Ian Ramage
                           Andrew Blancato
                           Assistant Attorneys General
                           28 Liberty Street, 18th Floor
                           New York, New York 10005
                           (212) 416-8659/6359

                           <u> /s/                      </u>
                           Kellie Elizabeth Lagitch
                           Carol C. Pierce
                           Office of the Orange County Attorney
                           <u>Attorney for County Defendants</u>
                           255-275 Main Street
                           Goshen, NY 10924
                           (845) 291-3150

\* Electronic signature used with permission pursuant to SDNY ECF Rule 8.5(b).